**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | |
|---|---|
| **VIRGINIA NATURAL GAS, INC.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )   **Civil Action No.** ___3:21cv66_____ |
| | ) |
| **C4GT, LLC,** | ) |
| | ) |
| **Defendant.** | ) |

## COMPLAINT

Plaintiff Virginia Natural Gas, Inc. ("VNG"), by counsel, hereby files this Complaint and states as follows:

### Parties

1.      Plaintiff VNG is a Virginia corporation with its headquarters and principal place of business in Virginia Beach, Virginia.  VNG is a public utility that delivers natural gas to customers throughout a certificated service territory located within southeastern Virginia.

2.      Defendant C4GT, LLC ("C4GT") is a limited liability company organized under the laws of the State of Delaware that maintains its headquarters and principal place of business in Novi, Michigan.  C4GT was formed on February 5, 2016, to develop, construct, own, and operate a gas-fired electric power generation facility in Charles City, Virginia (the "C4GT Plant").  According to C4GT's 2016 filings with the State Corporation Commission of Virginia, C4GT has only one member, located in Michigan.  Further, C4GT's President, Anand Gangadharan, is a resident and citizen of Michigan.  Upon information and belief, and based on the exercise of reasonable diligence, C4GT's sole member is neither a resident nor a citizen of Virginia.

**Jurisdiction and Venue**

3.      This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332, because the parties are citizens of different states, and the matter in controversy exceeds $75,000, exclusive of interests and costs.

4.      This Court has personal jurisdiction over C4GT because C4GT was formed for the purpose of developing, constructing, owning, and operating the C4GT Plant in Charles City County, Virginia.  C4GT contacted and negotiated with VNG representatives located at VNG's Virginia Beach headquarters regarding service to the C4GT Plant.  Moreover, C4GT and VNG executed an October 3, 2019 Virginia Natural Gas Header Improvement Project Precedent Agreement (the "Precedent Agreement" or the "Agreement"), which contemplated that C4GT would purchase firm transportation services on VNG's high-pressure transmission system path between Quantico, Virginia, and Chesapeake, Virginia.  The Precedent Agreement is the subject matter of this case.  Moreover, C4GT owns real property located at 3001 Roxbury Road, Charles City, Virginia 23030, the intended location of the C4GT Plant.  C4GT has engaged in construction activities on such property.

5.      This District is a proper venue for this contract action pursuant to 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to the claim occurred in this District.  The Precedent Agreement contemplated "delivery of natural gas to be consumed in Virginia," within this District.  (Exhibit 1, Precedent Agreement § 7(f).)  Representatives of VNG negotiated the Precedent Agreement and managed the subject matter of the Agreement from offices at VNG's headquarters in Virginia Beach.  Correspondence concerning the Agreement— including C4GT's initial request for service that led to the Agreement's formation—was sent to and received from VNG's Virginia Beach offices.  Moreover, the parties expressly agreed that the

"interpretation and performance" of the Agreement would be governed by Virginia law. (*Id.* § 15.) Finally, C4GT planned to construct the C4GT Plant on a parcel of land that C4GT owns at 3001 Roxbury Road, Charles City, Virginia 23030, which is within the Richmond Division of this District.  Construction of the C4GT Plant in Charles City—and the natural gas transportation services that VNG was to provide for the benefit of the C4GT Plant—formed the basis for the Precedent Agreement.  C4GT's failure to timely develop the C4GT Plant was a primary factor in the series of events underlying this lawsuit.

## The Precedent Agreement and Its Purpose

6.      In or around August 2015, representatives of NOVI Energy, LLC contacted VNG for information on natural gas services related to the C4GT Plant, a combined cycle gas-fired electrical generation facility that C4GT planned to build in Charles City, Virginia.

7.      VNG is the local natural gas distribution company that would service the C4GT Plant once built.  If a customer requests service, VNG is required to provide that service as long as VNG can be compensated for it.  Because the C4GT Plant would have significant fueling requirements, existing VNG infrastructure was insufficient to meet the C4GT Plant's needs.  To meet those needs, VNG would be required to expand its pipeline infrastructure and related facilities, including tapping into an existing interstate pipeline, building two new compressor stations, and looping pipeline.

8.      Around the same time, two other VNG customers, which are themselves public utilities, were interested in procuring additional pipeline transportation capacity to ultimately serve their own customers.  Accordingly, the collective requirements of three VNG customers drove VNG's need to expand its infrastructure.  The proposed pipeline system expansion would also provide benefits to VNG's other retail (firm sales) distribution customers.  The operation and

expansion of natural gas pipelines is a highly regulated activity that requires careful planning and substantial financial outlay—in addition to the commitment of time and other resources—by distribution companies such as VNG.

9.      VNG's infrastructure expansion project at issue here became known as the Header Improvement Project (the "Project") and would entail constructing, owning, and operating certain expansion facilities that would permit firm transportation of natural gas from supply interconnects located within VNG's high-pressure transmission system to delivery points along VNG's system between Quantico, Virginia, and Chesapeake, Virginia.

10.     To ensure that C4GT and its other customers would purchase firm transportation service once VNG completed this infrastructure expansion, VNG entered into precedent agreements with each customer, including the Precedent Agreement between VNG and C4GT executed on October 3, 2019.  Under the Precedent Agreement, C4GT committed to purchasing from VNG firm transportation service related to the Project upon the Project's completion and pursuant to a Firm Transportation Service Agreement.  (Ex. 1, Precedent Agreement § 1 and Exhibit A.)

11.     As a condition precedent to the parties' rights and obligations under the Precedent Agreement, C4GT was required to enter into legally binding debt financing agreements from third-party institutions to finance the development, construction, and ownership of the C4GT Plant.  The Precedent Agreement required C4GT to close on this financing and draw funds under the financing agreements by June 30, 2020 (the "Financial Close").  (Ex. 1, Precedent Agreement § 3(b)(ii).)

12.     Consistent with C4GT's obligation to obtain timely financing, and as a further safeguard to ensure the financial viability of the Project, the Precedent Agreement also incorporated a Credit Support Addendum.  The Credit Support Addendum provided that if VNG

determined that C4GT was not "creditworthy," as defined in Section 2 of the Addendum, VNG could require C4GT to provide any requested financial information reasonably relevant to VNG's assessment of creditworthiness within five (5) business days of such a request from VNG.  VNG also had the right to demand that C4GT furnish within five (5) business days either a guaranty or collateral in the amount of $3,000,000 as credit support.  (Ex. 1, Precedent Agreement Exhibit D §§ 1, 3, 9(j).)

13.     Section 8 of the Precedent Agreement provided that C4GT's failure to comply with its obligations under the Credit Support Addendum would be deemed a material breach of the Precedent Agreement, for which there would be no cure period.  (Ex. 1, Precedent Agreement § 8 and Exhibit D.)

14.     VNG had the right to terminate the Precedent Agreement if C4GT failed to satisfy all requirements regarding C4GT's creditworthiness under Section 8, which incorporated the Credit Support Addendum.  The Agreement would terminate thirty (30) days from VNG's written notice to C4GT following an event giving rise to VNG's right to terminate. (Ex. 1, Precedent Agreement §§ 9(b)(iv), (d).)

15.     If VNG terminated the Precedent Agreement because C4GT failed to meet the creditworthiness requirements established in the Credit Support Addendum, C4GT would be liable to VNG for reimbursement as set forth in Section 10, among other potential forms of damages. (*Id.* §§ 10(b), 10(b)(i).)

16.     More specifically, under Section 10, the parties expressly contemplated and acknowledged that VNG had incurred and would continue to incur costs to develop and construct the Project.  These costs, known as "VNG Incurred Project Costs," included "surveying and site acquisition, material and equipment costs, labor costs, engineering and design services,

environmental consulting and permit-related costs, regulatory approval and legal services costs, internal overhead and any debt and equity carrying costs (as determined by VNG's then-current capital structure), and to the extent any reimbursement by Customer to VNG is considered taxable income to VNG, the costs associated with such tax effect."  (*Id.* § 10(a).)

17.     If VNG terminated the Precedent Agreement because C4GT failed to perform its material obligations thereunder, this would constitute a "Reimbursable Event" under the Precedent Agreement.  Section 10 required C4GT to pay VNG the "Customer[1] Reimbursement Amount" for Reimbursable Events.  (*Id.* § 10(b).)

18.     The Precedent Agreement provided that Section 8 (Creditworthiness) and Section 10 (Customer Obligation to Reimburse VNG) would survive the termination of the Agreement.  (*Id.* § 9(a).)

19.     The Customer Reimbursement Amount includes "(I) [C4GT]'s Proportionate Share of VNG Incurred Project Costs *plus* (II) [C4GT]'s Proportionate Share of any cancellation or termination costs under contracts with VNG vendors or contractors that cannot be reasonably avoided by termination, *minus* (III) (X) mitigation amounts associated with VNG using reasonable efforts to resell such terminated [C4GT]'s transportation capacity available to be sold, if any, as prudently determined by VNG, and (Y) [C4GT]'s Proportionate Share of the proceeds or reductions resulting from returning or reselling construction materials or cancelling purchase orders and contracts to the extent possible and practical."  (*Id.* § 10(b) (emphases in original).)  In this definition, "Customer's Proportionate Share" meant the ratio of C4GT's Maximum Daily Contract Quantity ("MDCQ"), to the total MDCQ for the Project.  (*Id.*)  In other words, Customer's

---

[1] C4GT is defined as "Customer" in the Precedent Agreement.  Accordingly, references to the term "Customer" in discussions of the Agreement herein mean C4GT.

Proportionate Share meant the portion of natural gas that VNG would deliver to C4GT under the Project, versus the portion VNG would deliver to its other customers.

20.     Within sixty (60) days of a Reimbursable Event, the Precedent Agreement required VNG to present C4GT with an itemized invoice for the Customer Reimbursement Amount.  After receipt of VNG's invoice, C4GT had the right to audit the books and records of VNG with respect to the Customer Reimbursement Amount.  Payment in full of VNG's invoice would be due sixty (60) days from the date of invoice issuance.  (*Id.* § 10(c).)  If C4GT disputed the Customer Reimbursement Amount, it had to notify VNG in writing by no later than the payment due date. (*Id.* § 10(e).)

21.     The Precedent Agreement also required VNG to make reasonable efforts to mitigate the VNG Incurred Project Costs, including "good faith efforts to redeploy, return, cancel, sell or assign the materials and supplies, if any, that will not be used" as a result of the termination of the Precedent Agreement.  VNG would have to net any redeployment, return, cancellation, sale, or assignment amounts against the VNG Incurred Project Costs.  (*Id.* § 10(d).)

22.     The parties agreed to attempt to resolve by mutual agreement any dispute concerning the Customer Reimbursement Amount.  Then, if it was determined that C4GT owed some or all of the withheld disputed amount, C4GT would be required to pay that amount plus interest at an annual rate equal to one hundred (100) basis points above the Prime Rate from the due date until the date of payment.  Conversely, if it was determined that C4GT did not owe the disputed amount, VNG had to refund the amount plus interest accrued at the Prime Rate from the due date until the date of payment.  (*Id.* § 10(e).)

23.     If the parties could not resolve a dispute within sixty (60) days, it would become subject to Section 16 of the Precedent Agreement, which required the parties to use their best

efforts to informally resolve by mutual agreement any dispute promptly, equitably, and in good faith.  If a dispute remained unresolved despite the parties' best efforts, they would be free to pursue any remedy available in law or equity.  (*Id.* §§ 10(e); 16.)

### C4GT's Failure To Perform Under the Precedent Agreement

24.     Pursuant to the Precedent Agreement and VNG's commitments from its other customers, VNG moved forward with the Project, including by filing an application for a certificate of public convenience and necessity ("CPCN") with the State Corporation Commission of Virginia (the "Commission"), as required by the Precedent Agreement.  (Ex. 1, Precedent Agreement § 3(a)(iii).)  *See* SCC Case No. PUR-2019-00207, December 6, 2019 Application.

25.     Meanwhile, on May 3, 2017, C4GT obtained a CPCN from the Commission to construct the C4GT Plant.  C4GT's CPCN would expire on May 3, 2019, if C4GT had not commenced construction of the facility.  *See* SCC Case No. PUE-2016-00104, May 3, 2017 Order.

26.     On March 1, 2019, citing changes in the market for additional electric generating capacity, C4GT petitioned the Commission for a two-year extension of its CPCN to construct the C4GT Plant.  The Commission granted the extension on March 12, 2019, extending the CPCN through May 3, 2021.  *See* SCC Case No. PUE-2016-00104, March 12, 2019 Order.

27.     In or around early spring 2020, through conversations with C4GT's President, Anand Gangadharan, VNG became aware that C4GT might have trouble achieving Financial Close on the existing timeline.  C4GT explained that its financial challenges were multi-faceted, including the COVID-19 outbreak and its impact on financial markets, volatility in the natural gas producer segment, and uncertainties in the power market and capacity auction process.

28.     On April 14, 2020, C4GT gave VNG notice that it would not meet the June 30, 2020 Financial Close deadline and thus desired to extend the deadline to December 31, 2020.

C4GT also requested that VNG limit its expenses to those related to VNG's CPCN filing.  (Exhibit 2, the "April 14 Notice.")

29.     Following the April 14 Notice, VNG engaged in extensive discussions with C4GT in an attempt to resolve potential issues surrounding C4GT's inability to achieve Financial Close.

30.     On June 26, 2020, the Commission determined that without the C4GT Plant, VNG would have no need to move forward with the Project.  Accordingly, the Commission entered a preliminary order indicating it would not approve VNG's requested CPCN without confirmation that C4GT's Financial Close was certain to occur.  *See* SCC Case No. PUR-2019-00207, June 26, 2020 Order, at 9.  The Commission observed that although C4GT had obtained a CPCN from the Commission over three (3) years ago, C4GT had not obtained financing for construction costs, had asked VNG not to incur expenses for the Project other than those necessary to obtain a CPCN from the Commission, and had indefinitely delayed Financial Close.  *Id.* at 6

31.     As a result of C4GT's financing issues, VNG and C4GT began to discuss exiting the Precedent Agreement to allow VNG to pursue a re-scaled infrastructure expansion project.  On September 17, 2020, for example, C4GT emailed VNG, noting, among other things, that C4GT had been unable to obtain financing as originally planned.  C4GT contended, however, that if it terminated the Precedent Agreement, it would not owe any financial obligations to VNG for prior expenses. (Exhibit 3, the "September 17 Email.")

32.     On September 24, 2020, VNG disputed C4GT's assertion that C4GT was not responsible for reimbursing its share of the VNG Incurred Project Costs.  VNG further stated that it had "serious doubts as to the financial viability of C4GT's project," given C4GT's repeated concerns about financing and its failure to achieve Financial Close by the June 30, 2020 deadline. (Exhibit 4, at 1, the "September 24 Letter.")

33.     Furthermore, VNG stated its belief that the parties and stakeholders "would be best served by VNG and C4GT agreeing to terminate the Precedent Agreement," and that C4GT would be responsible for the Customer Reimbursement Amount.  As of the date of VNG's letter, September 24, 2020, that amount was $2,048,116.  VNG expressed willingness to discuss the calculation of the amount and to allow C4GT to exercise its right to audit the component costs associated with the amount.  (*Id.*)

34.     VNG sought a response to its September 24 Letter within five (5) business days. Additionally, to address VNG's serious concerns about C4GT's financial condition and its ability to pay the Customer Reimbursement Amount, VNG exercised its rights under the Credit Addendum to request "(i) financial information establishing that C4GT is 'Creditworthy' as defined in Section 2 of the Credit Addendum or (ii) PA Credit Support as defined in Section 3 of the Credit Addendum in the currently applicable amount of three million dollars ($3,000,000)." (*Id.* at 2.)  The Credit Addendum gave VNG this right to exercise "in its sole judgment" if it determined that C4GT was not Creditworthy, as defined in Section 2 of the Credit Addendum. (Ex. 1, Precedent Agreement Exhibit D §§ 1, 2.)

35.     C4GT responded to the September 24 Letter on October 1, 2020, broadly denying that it owed any Customer Reimbursement Amount, refusing VNG's requests for financial information or credit support, and ignoring VNG's invitation for C4GT to exercise its right to audit the costs underlying the Customer Reimbursement Amount.  (Exhibit 5, the "C4GT October 1 Letter.")

36.     Later that same day, VNG sent C4GT another letter, again demanding that C4GT provide credit support as defined in the Credit Addendum, in the amount of $3,000,000, within five (5) business days.  (Exhibit 6, at 1, the "VNG October 1 Letter.")  C4GT failed to do so.

**VNG Formally Declares a Breach and Terminates**

37.    As of October 9, 2020, C4GT had not complied with VNG's repeated demands for financial information and credit support.  Accordingly, pursuant to Section 9(d) of the Precedent Agreement, VNG provided written notice of its termination of the Precedent Agreement for C4GT's failure to comply with its obligations under the Credit Support Addendum, which constituted a material breach under section 9(b)(iv).  Per Section 9(d), VNG confirmed that its termination would become effective thirty (30) days later.  (Exhibit 7, at 1, the "October 9 Notice of Termination.")

38.    Because VNG's termination constituted a Reimbursable Event, VNG indicated in its October 9 Notice of Termination that it would provide a full and final invoice for the Customer Reimbursement Amount.  Pursuant to the Precedent Agreement, payment would be due to VNG within sixty (60) days of the date of the invoice, but VNG acknowledged in its October 9 Notice of Termination that C4GT possessed and could exercise certain audit rights during the 60-day period.  (*Id.*)

39.    On October 21, 2020, VNG provided C4GT with an invoice for the Customer Reimbursement Amount dated October 21, 2020.  (Exhibit 8, at 1, the "Invoice.")  The amount due from C4GT as set forth on the Invoice was $2,115,576.64.  (*Id.*)  The Invoice provided a breakdown of VNG Incurred Project Costs in five categories: (1) Engineering; (2) Environmental; (3) Land; (4) Overheads; and (5) Internal Labor.  (*Id.*)

40.    On the same date, VNG also provided C4GT with a cost-to-date analysis, which provided a further breakdown of VNG Incurred Project Costs on which the Invoice was based  (the "Cost-to-Date Analysis").  The Cost-to-Date Analysis reflected C4GT's portion of the VNG Incurred Project Costs, which was based on C4GT's majority share of the Project's MDCQ.

41.     These cost amounts were determined using invoiced values and internal charged amounts as recorded by VNG's Corporate Engineering, Project Management Organization.  All of the costs related solely to supporting VNG's application for a CPCN from the Commission, which was a necessary condition to the Precedent Agreement.  These costs included engineering-related services, survey work, and legal spend.

42.     Because the Project as to C4GT never reached the stage of procuring materials and supplies, there were no materials or supplies to return, cancel, sell, or reassign.  (*See* Ex. 1, Precedent Agreement § 10(d).)

43.     The 60-day payment period expired on December 20, 2020.  C4GT failed to pay the Invoice by the end of the 60-day period, nor did C4GT dispute the Invoice or exercise its rights to conduct an audit with respect to the Invoice.  Accordingly, on January 1, 2021, VNG again demanded payment of the Invoice, this time within fifteen (15) days, expressing willingness to accept a mutually agreeable payment plan.  (Exhibit 9, at 1, the "January 1 Demand Letter.")

44.     Although C4GT acknowledged receipt of the January 1 Demand Letter, it did not formally respond, pay the Invoice, or express any inclination to pay the Invoice in the future, much less within the 15-day window requested.

45.     In a further attempt to resolve the Invoice payment matter without litigation, on January 20, 2021, VNG, through the undersigned counsel, provided C4GT with yet another opportunity to pay the Invoice and engage in dialogue on the subject.  The January 20 Demand Letter attached a draft of the instant Complaint and indicated that VNG would be compelled to initiate litigation if the parties could not amicably resolve payment of the Invoice within five (5) business days of the letter.  (Exhibit 10, the "January 20 Demand Letter.")

46.     More than five (5) business days have elapsed, and C4GT has not responded to—or even acknowledged—the January 20 Demand Letter.

47.     Pursuant to Section 16 of the Precedent Agreement, VNG has, in good faith, used its best efforts to informally resolve by mutual agreement any potential disputes regarding the Invoice—although C4GT has raised none—prior to filing this lawsuit.  On more than one occasion, VNG invited C4GT to exercise its audit rights under the Precedent Agreement, which C4GT declined to do.  After C4GT failed to pay the Invoice within the requisite sixty (60) days, VNG provided C4GT with additional time and ample opportunity to respond to its payment demand.  Although VNG has attempted in good faith to reach an amicable resolution with C4GT, C4GT has refused to engage.

### **Count I: Breach of Contract**

48.     VNG restates the preceding paragraphs as if fully set forth herein.

49.     In executing the Precedent Agreement, C4GT entered into a valid and binding contract with VNG.

50.     VNG fully performed all of its obligations under the Agreement.  C4GT, however, breached at least two related sets of obligations.

51.     First, C4GT breached its obligations under the Credit Support provisions of the Precedent Agreement.  Specifically, within five (5) business days of a request from VNG, Section 1 of the Credit Support Addendum required C4GT to provide financial information establishing that C4GT is creditworthy as defined in Section 2 of the Credit Support Addendum, or to provide credit support as defined in Section 3 of the Credit Support Addendum.  VNG first issued its request in the September 24 Letter.

52.     C4GT did not provide the requisite credit information within five (5) business days of VNG's request, as required by Section 1 of the Credit Addendum.

53.     In the October 1 Letter, VNG again demanded that C4GT provide credit support as defined in Section 3 of the Credit Support Addendum, in the amount of $3,000,000.

54.     As of the date of filing this Complaint, C4GT has not provided credit support pursuant to VNG's demand and as required by the Credit Support Addendum.

55.     Under Section 8 of the Precedent Agreement, any breach of C4GT's obligations under the incorporated Credit Support Addendum constitutes a material breach of the Precedent Agreement, for which there is no cure period.  C4GT refused to comply with its obligations under the Credit Support Addendum and thus materially breached the Precedent Agreement.

56.     Second, C4GT breached its obligation to pay VNG the Customer Reimbursement Amount, which C4GT owed because VNG terminated the Precedent Agreement for C4GT's breach of the Credit Support Addendum.  Specifically, due to C4GT's failure to meet the requirements of the Credit Support Addendum, and pursuant to Section 9(b) of the Precedent Agreement, VNG terminated the Precedent Agreement through the October 9 Notice of Termination, which became effective thirty (30) days from the date of issuance.

57.     VNG's termination constitutes a Reimbursable Event under Section 10(b)(i) of the Precedent Agreement.  Accordingly, the Precedent Agreement required C4GT to pay the Customer Reimbursement Amount.

58.     In compliance with Section 10(c) of the Precedent Agreement, VNG presented C4GT with the itemized Invoice for the Customer Reimbursement Amount, $2,115,576.64, on October 21, 2020.  VNG also provided C4GT with the Cost-to-Date Analysis, which supplied additional detail regarding C4GT's majority share of the VNG Incurred Project Costs.

59.     In compliance with Section 10(d) of the Precedent Agreement, VNG made reasonable efforts to mitigate the VNG Incurred Project Costs to be reimbursed by C4GT. Specifically, VNG limited its costs to only those necessary to support the CPCN, which involved a single application and proceeding for the entire Project, not just for C4GT.  Indeed, VNG avoided material and supply costs, like buying pipe and ordering compressors, because it had not yet obtained the necessary CPCN.

60.     C4GT, however, declined to exercise its right to audit VNG's books and records with respect to the Invoice and did not otherwise dispute the Invoice.

61.     C4GT's payment of the Invoice was due on December 20, 2020.  As of the date of filing this Complaint, C4GT has not paid the Customer Reimbursement Amount of $2,115,576.64, or any portion of this amount.

62.     C4GT's failure to pay the Customer Reimbursement Amount within sixty (60) days of the date of the Invoice constitutes a breach of Section 10 of the Precedent Agreement, a provision that the Precedent Agreement specified would survive termination of the Agreement.

63.     C4GT owes VNG $2,115,576.64 plus interest at an annual rate equal to one hundred (100) basis points above the U.S. Prime Rate from December 20, 2020, until the date of payment.  (Ex. 1, Precedent Agreement § 10(e).)

64.     Despite several requests for payment in writing, and the extension of numerous courtesies and invitations to engage in dialogue to avoid litigation, C4GT has wrongly refused to make payment.  As of the date of the filing of this Complaint, VNG has used and exhausted its best efforts to informally resolve, by mutual agreement, C4GT's failure to pay the Customer Reimbursement Amount, per Section 16 of the Precedent Agreement.

65.     As a result of C4GT's breaches of the Precedent Agreement, VNG has suffered actual damages, including the Customer Reimbursement Amount, with the exact amount to be determined at trial, including prejudgment interest.

66.     Additionally, VNG seeks all reasonable costs and fees, including attorneys' fees, incurred in enforcing its rights under the Precedent Agreement.

WHEREFORE, in consideration of the foregoing, VNG respectfully moves this Court to enter judgment in its favor, and against C4GT, in an amount to be proven at trial for all damages sustained as a result of C4GT's breaches of the Precedent Agreement, and granting VNG any other relief, including all costs and fees, as the Court deems just and proper.


Dated:  February 4, 2021                Respectfully submitted,

                                        */s/ Ryan D. Frei*
                                        Joseph K. Reid, III (VSB No. 35724)
                                        Ryan D. Frei (VSB No. 70996)
                                        Katherine E. Lehnen (VSB No. 92357)
                                        McGuireWoods LLP
                                        Gateway Plaza
                                        800 East Canal Street
                                        Richmond, Virginia 23219
                                        Tele: (804) 775-1134
                                        Fax: (804) 698-2168
                                        jreid@mcguirewoods.com
                                        rfrei@mcguirewoods.com
                                        klehnen@mcguirewoods.com

                                        *Counsel for Plaintiff Virginia Natural Gas, Inc.*