IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| **VIRGINIA NATURAL GAS, INC.,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:21-cv-00066-MHL |
| | ) | |
| **C4GT, LLC,** | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF VIRGINIA NATURAL GAS, INC.'S
MOTION FOR DEFAULT JUDGMENT**

Plaintiff Virginia Natural Gas, Inc. ("VNG"), by counsel, and pursuant to Rule 55(b) of the Federal Rules of Civil Procedure, files this Motion for Default Judgment against Defendant C4GT, LLC ("C4GT"). Despite being properly served with VNG's Complaint, C4GT failed to appear, plead, or otherwise defend this action. Accordingly, the Clerk entered default against C4GT on March 12, 2021. Through its default, C4GT has admitted VNG's well-pleaded factual allegations in the Complaint. Accordingly, VNG now moves for default judgment against C4GT for the reasons set forth herein.[1]

**I.    FACTUAL BACKGROUND**

**A.    The Precedent Agreement and Its Purpose**

In or around August 2015, representatives of C4GT's parent company contacted VNG, the local gas distribution company, about natural gas services related to a gas-fired electrical generation facility that C4GT planned to build in Charles City, Virginia (the "C4GT Plant"). (ECF

---

[1] Pursuant to Local Civil Rule 7(F)(2)(c), VNG submits this Motion without an accompanying memorandum in support.

1

No. 1, Compl. ¶¶ 6–7.) To service the C4GT Plant, and also to meet the needs of two of VNG's other customers, VNG embarked on an infrastructure-expansion project known as the Header Improvement Project (the "Project"). (*Id.* ¶¶ 7–9.) The Project would entail constructing, owning, and operating expansion facilities that would permit firm transportation of natural gas from supply interconnects located within VNG's high-pressure transmission system to delivery points along VNG's system between Quantico and Chesapeake, Virginia. (*Id.* ¶ 9.) To ensure that C4GT and VNG's two other customers would purchase firm transportation service once VNG completed the Project, VNG entered into precedent agreements with each of the three customers, including a precedent agreement between VNG and C4GT executed on October 3, 2019 (the "Precedent Agreement" or the "Agreement"). (*Id.* ¶ 10.)

The Precedent Agreement required C4GT to close on financing for the C4GT Plant by June 30, 2020 (the "Financial Close"). (Compl. Ex. 1, Precedent Agreement § 3(b)(ii).) Relatedly, the Agreement contained a Credit Support Addendum, which provided that if VNG determined that C4GT was not "creditworthy," VNG could require C4GT to provide certain financial information or to furnish a guaranty or collateral of $3,000,000 as credit support. (Compl. Ex. 1, Precedent Agreement Exhibit D §§ 1, 3, 9(j).) Under Section 8 of the Precedent Agreement, C4GT's failure to comply with the Credit Support Addendum would be a material breach of the Agreement with no cure period. (Compl. Ex. 1, Precedent Agreement § 8 and Exhibit D.) VNG had the right to terminate the Agreement if C4GT failed to satisfy the creditworthiness requirements in Section 8, which incorporated the Credit Support Addendum. (Compl. Ex. 1, Precedent Agreement §§ 9(b)(iv), (d).) The Agreement provided that Section 8 would survive termination. (*Id.* § 9(a).)

Per Section 10(b), if VNG terminated the Precedent Agreement because C4GT failed to meet the creditworthiness requirements, C4GT would be liable to VNG for reimbursement of

certain costs, among other potential forms of damages. (*Id.* §§ 10(b), 10(b)(i).) The parties expressly contemplated and acknowledged that VNG had incurred and would continue to incur costs to develop and construct the Project. (*Id.* § 10(a).) These costs, known as "VNG Incurred Project Costs," included "surveying and site acquisition, material and equipment costs, labor costs, engineering and design services, environmental consulting and permit-related costs, regulatory approval and legal services costs, internal overhead and any debt and equity carrying costs (as determined by VNG's then-current capital structure), and to the extent any reimbursement by Customer to VNG is considered taxable income to VNG, the costs associated with such tax effect." (*Id.*) If VNG terminated the Agreement because C4GT failed to perform its material obligations thereunder, this would constitute a "Reimbursable Event," for which Section 10 required C4GT to pay VNG the "Customer Reimbursement Amount." (*Id.* § 10(b).) The Agreement provided that Section 10 would survive the Agreement's termination. (*Id.* § 9(a).) The Customer Reimbursement Amount reflects C4GT's proportionate share of the Project costs. (Compl. ¶ 19.)

Within sixty (60) days of a Reimbursable Event, the Precedent Agreement required VNG to present C4GT with an itemized invoice for the Customer Reimbursement Amount, which would be due sixty (60) days from the date of issuance. (Compl. Ex. 1, Precedent Agreement § 10(c).) C4GT had the right to audit the books and records of VNG and to dispute the Customer Reimbursement Amount. (*Id.* §§ 10(c), (e).) The Agreement also required VNG to make reasonable efforts to mitigate the VNG Incurred Project Costs. (*Id.* § 10(d).) If a dispute arose regarding the Customer Reimbursement Amount, the parties would attempt to resolve it by mutual agreement, after which they would be free to pursue any remedy available. (*Id.* §§ 10(e), 16.)

**B.    C4GT's Failure To Perform Under the Precedent Agreement**

Pursuant to the Precedent Agreement and VNG's commitments from its other customers,

VNG moved forward with the Project, including by filing an application for a Certificate of Public Convenience and Necessity ("CPCN") with the State Corporation Commission of Virginia (the "Commission"), as required by the Precedent Agreement. (Compl. Ex. 1, Precedent Agreement § 3(a)(iii).) In or around early spring 2020, through conversations with C4GT's President, Anand Gangadharan, VNG became aware that C4GT might have trouble timely achieving Financial Close. (Compl. ¶ 27.) C4GT explained that its financial challenges were multi-faceted, including the COVID-19 outbreak and its impact on financial markets, volatility in the natural gas producer segment, and uncertainties in the power market and capacity auction process. (*Id.*)

On April 14, 2020, C4GT gave VNG notice that it would not meet the June 30, 2020 Financial Close deadline and desired to extend the deadline to December 31, 2020. (*Id.* ¶ 28.) C4GT also requested that VNG limit its expenses to those related to VNG's CPCN filing. (Compl. Ex. 2.) VNG engaged in extensive discussions with C4GT in an attempt to resolve any issues surrounding C4GT's inability to achieve Financial Close, including the possibility of exiting the Precedent Agreement to allow VNG to pursue a re-scaled infrastructure expansion project. (*Id.* ¶¶ 29, 31.) On September 17, 2020, C4GT emailed VNG, acknowledging that C4GT had been unable to obtain financing as originally planned but contending that if the parties exited the Agreement, C4GT would not owe any financial obligations to VNG for prior expenses. (Compl. ¶ 31, Ex. 3.)

On September 24, 2020, VNG disputed C4GT's assertion that C4GT was not responsible for reimbursing its share of the VNG Incurred Project Costs. (Compl. ¶ 32.) VNG further stated that the parties and stakeholders "would be best served by VNG and C4GT agreeing to terminate the Precedent Agreement," and that C4GT would owe the Customer Reimbursement Amount. (Compl. Ex. 4, at 1.) To address VNG's serious concerns about C4GT's financial condition and

its ability to pay the Customer Reimbursement Amount, VNG exercised its right to request "(i) financial information establishing that C4GT is 'Creditworthy' as defined in Section 2 of the Credit Addendum or (ii) PA Credit Support as defined in Section 3 of the Credit Addendum in the currently applicable amount of three million dollars ($3,000,000)." (*Id*. at 2.)

C4GT responded on October 1, 2020, broadly denying that it owed the Customer Reimbursement Amount and refusing VNG's requests for financial information or credit support. (Compl. Ex. 5, at 3.) Later that same day, VNG sent C4GT another demand for credit support within five (5) business days. (Compl Ex. 6, at 1.) C4GT failed to comply. (Compl. ¶ 36.)

**C.    VNG Formally Declares a Breach and Terminates**

As of October 9, 2020, C4GT had not fulfilled VNG's repeated requests for financial information and credit support. (Compl. ¶ 37.) Accordingly, VNG provided written notice of termination for C4GT's failure to comply with its obligations under the Credit Support Addendum, which constituted a material breach. (Comp. Ex. 7, at 1.) Because VNG's termination constituted a Reimbursable Event, VNG indicated that it would provide a full and final invoice for the Customer Reimbursement Amount. (*Id.*) Pursuant to the Precedent Agreement, payment would be due to VNG within sixty (60) days of the date of the invoice, but VNG acknowledged that C4GT could exercise its audit rights during the 60-day period. (*Id.*).

On October 21, 2020, VNG provided C4GT with an invoice for the Customer Reimbursement Amount. (Compl. Ex. 8, at 1, the "Invoice.") The Invoice reflected that C4GT owed VNG $2,115,576.64. (*Id.*) The Invoice included a breakdown of VNG Incurred Project Costs into five categories (*see id.*), but on the same date, VNG also provided C4GT with a cost-to-date analysis containing a further itemization of VNG Incurred Project Costs (the "Cost-to-Date Analysis"). (Exhibit 1 to the Declaration of Kenneth W. Yagelski in Support of VNG's Motion

5

for Default Judgment, attached hereto as Exhibit A (hereinafter, "Yagelski Decl."); *see also* Compl. ¶ 40.)  The Cost-to-Date Analysis reflected C4GT's portion of the VNG Incurred Project Costs.  (Compl. ¶¶ 40–41.)  All of the costs related solely to supporting VNG's application for a CPCN from the Commission, which was a necessary condition to the Agreement.  (*Id.* ¶ 41.)

When the 60-day payment period expired on December 20, 2020, C4GT had not paid the Invoice, disputed the Invoice, or exercised its rights to conduct an audit with respect to the Invoice.  (*Id.* ¶ 43.)  Accordingly, on January 1, 2021, VNG again demanded payment of the Invoice, this time within fifteen (15) days, expressing willingness to accept a mutually agreeable payment plan.  (Compl. Ex. 9, at 1.)  Although C4GT acknowledged receipt of this letter, it did not formally respond, pay the Invoice, or express any inclination to pay the Invoice in the future.  (Compl. ¶ 44.)

In a further attempt to resolve the Invoice payment matter without litigation, on January 20, 2021, VNG, through the undersigned counsel, sent C4GT a letter with a draft of VNG's Complaint, indicating that VNG would be compelled to initiate litigation if the parties could not amicably resolve payment of the Invoice within five (5) business days.  (Compl. Ex. 10.)  C4GT did not respond to—or even acknowledge—the letter.  (Compl. ¶ 46.)  In sum, VNG, in good faith, used its best efforts to informally resolve by mutual agreement any potential disputes regarding the Invoice—although C4GT raised none—prior to filing suit.  (*Id.* ¶ 47.)

## II.     PROCEDURAL BACKGROUND

Given C4GT's refusal to engage on the topic of the Customer Reimbursement Amount, on February 4, 2021, VNG filed a Complaint against C4GT for breach of contract.[2]  (ECF No. 1.)  As

---

[2] VNG also filed a Motion to Seal portions of exhibits attached to the Complaint, Memorandum in Support of Motion to Seal, Proposed Order on Motion to Seal, and Notice of Filing Motion to Seal on February 4, 2021. (ECF Nos. 6–8.)  C4GT did not respond or object to the Motion, and the Court entered an Order granting the Motion on March 2, 2021.  (ECF No. 13.)

set forth above, VNG's Complaint demonstrates that C4GT breached its obligations under the Credit Support provisions of the Precedent Agreement and breached its obligation to pay VNG the Customer Reimbursement Amount. The Complaint demands all damages sustained due to C4GT's breaches, including the Customer Reimbursement Amount of $2,115,576.64, plus interest.

The Clerk issued a Summons for C4GT on February 5, 2021. (ECF No. 9.) C4GT was served with the Summons, Complaint, Motion to Seal, Memorandum in Support of Motion to Seal, Proposed Order on Motion to Seal, Notice of Filing Motion to Seal, and all exhibits corresponding to these filings via its registered agent, Corporation Service Company, on February 5, 2021, as demonstrated by the Summons Returned Executed and Proof of Service filed by VNG on February 8, 2021. (ECF No. 10.) C4GT was required to answer or otherwise respond to the Complaint by February 26, 2021. *See* (ECF No. 10 ("answer due 2/26/2021")); *see also* Fed. R. Civ. P. 12(a)(1)(A)(i).

C4GT did not serve or file a response to the Complaint by February 26, 2021, nor did it contact VNG's counsel seeking an extension of time to do so. To date, C4GT has not appeared or answered the Complaint. Pursuant to Federal Rule of Civil Procedure 55(a), VNG filed a Request for Entry of Default against C4GT on March 2, 2021. (ECF No. 12.) VNG served its Request for Entry of Default on C4GT by hand-delivering a copy to C4GT's registered agent in Virginia and by sending a copy to C4GT's principal business address in Michigan via Federal Express. (*See id.*) The Clerk entered default on March 12, 2021 (ECF No. 14), and VNG now moves for default judgment against C4GT.

### III.  LEGAL STANDARD

Default judgment is appropriate where a defendant fails to plead or otherwise defend an action against it. *See* Fed. R. Civ. P. 55(b)(2); *Music City Music v. Alfa Foods, Ltd.*, 616 F. Supp.

1001, 1002 (E.D. Va. 1985) ("Because [the] defendant has failed to plead or otherwise defend this action, a default judgment is appropriate and shall enter."). Prior to entering default judgment, "the [c]ourt must ensure that: (1) it possesses personal jurisdiction over the defaulting party; (2) it possesses subject-matter jurisdiction over each of the claims; (3) the action is in the proper venue; and, (4) the defaulting party received proper service of process." *Victoria Select Ins. Co. v. R&G Transp.*, No. 3:16-cv-624, 2017 WL 5158684, at *3 (E.D. Va. Sept. 7, 2017). "The [c]ourt must also 'determine whether the well-pleaded allegations in [the plaintiff's] complaint support the relief sought in th[e] action.'" *Id.* (quoting *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001)). "When a defendant defaults he admits 'the plaintiff's well-pleaded allegations of fact.'" *JTH Tax, Inc. v. Grabert*, 8 F. Supp. 3d 731, 736 (E.D. Va. 2014) (quoting *Ryan*, 253 F.3d at 780). In other words, "factual allegations in the complaint are deemed admitted and the 'appropriate inquiry is whether or not the face of the pleadings supports the default judgment and the causes of action therein.'" *JTH Tax*, 8 F. Supp. 3d at 736 (quoting *Anderson v. Found. for Advancement, Educ. & Emp. of Am. Indians*, 187 F.3d 628 (4th Cir. 1999)).

Additionally, Rule 55 authorizes a court to enter default judgment and award damages without conducting an evidentiary hearing if the amount of damages can be determined from "detailed affidavits or documents attached to the plaintiff's motion" for default judgment. *Anderson & Strudwick, Inc. v. IBD-Placement & Recruiting Services, LLC*, No. 3:11-cv-818, 2012 WL 1656504, *4 (E.D. Va. May 10, 2012) (Hudson, J.) (collecting cases).

## IV.     ARGUMENT

**A.     The Court Has Subject Matter and Personal Jurisdiction, Venue is Appropriate, and Service of Process Was Proper.**

   1.     <u>Subject Matter Jurisdiction</u>

The Court has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332 because

8

VNG and C4GT are citizens of different states and the amount in controversy exceeds $75,000. First, the parties are completely diverse because VNG is a citizen of Virginia, and C4GT is not. *See* 28 U.S.C. § 1332(a). VNG is incorporated under the laws of Virginia with a principal place of business in Virginia Beach, Virginia. (Compl. ¶ 1.) Accordingly, because "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business," VNG is a citizen of Virginia. 28 U.S.C. § 1332(c)(1).

C4GT is a limited liability company organized under the laws of Delaware, with a principal place of business in Novi, Michigan. (Compl. ¶ 2.) Because C4GT is a limited liability company, the citizenship of its members determines its citizenship. *See Travelers Indem. Co. of Am. v. Portal Healthcare Sols., LLC*, 644 F. App'x 245, 246 (4th Cir. 2016). According to C4GT's 2016 filings with the State Corporation Commission of Virginia, C4GT has only one member, located in Michigan. (Compl. ¶ 2.); *see* SCC Case No. PUE-2016-00104, C4GT Application Part 2 of 15, Attachment 1 (Sept. 14, 2016). Further, C4GT's President, Anand Gangadharan, is a resident and citizen of Michigan. (Compl. ¶ 2.) Based upon the exercise of reasonable diligence, and upon information and belief, no member of C4GT is a citizen of Virginia. Thus, there is complete diversity of citizenship in this case. *See, e.g.*, *Ellenburg v. Spartan Motors Chassis, Inc.*, 519 F.3d 192, 194–95, 199 (4th Cir. 2008) (holding that a removal notice containing an allegation regarding citizenship made upon information and belief was "sufficient as a matter of law to allege subject matter jurisdiction," although the primary challenge on appeal related to amount in controversy); *Jaffe-Spindler Co. v. Genesco, Inc.*, 747 F.2d 253, 255 n.1 (4th Cir. 1984) (characterizing the complaint's "uncontradicted allegation that none of [the plaintiff's] limited partners was a citizen of Tennessee" as "clear[ing] up one point bearing on whether there was diversity jurisdiction");

*Contreras v. Thor Norfolk Hotel, LLC*, 292 F. Supp. 2d 794, 797 (E.D. Va. 2003) (Doumar, J.) (deeming valid a notice of removal in which an LLC alleged that none of its members were citizens of the same states as the plaintiff); *Sunbelt Rentals, Inc. v. Perdomo Nat'l Wrecking Co., LLC*, No. 1:20-cv-758, 2020 WL 6163619, at *1 (E.D. Va. Oct. 2, 2020) (Buchanan, M.J.), *report and recommendation adopted*, 2020 WL 6161506 (E.D. Va. Oct. 21, 2020) (finding complete diversity when plaintiff adequately alleged upon information and belief that no members of the defendant LLC were citizens of the same states as the plaintiff).

Second, the amount in controversy exceeds the $75,000 jurisdictional minimum. *See* 28 U.S.C. § 1332(b). In its Complaint, VNG sought recovery of actual damages of no less than the Customer Reimbursement Amount, $2,115,576.64, exclusive of interest, costs and attorneys' fees. (Compl. ¶¶ 63, 65, 66.) Thus, because the parties are completely diverse and the amount in controversy exceeds $75,000, this Court has subject matter jurisdiction over this case.

2. Personal Jurisdiction

A court has personal jurisdiction over a defendant that has "sufficient 'minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice,' and when the defendant is subject to the personal jurisdiction of the courts of general jurisdiction of the forum state." *Joe Hand Promotions, Inc. v. Wing Spot Chicken & Waffles, Inc.*, 920 F. Supp. 2d 659, 662 (E.D. Va. 2013) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) and citing Fed. R. Civ. P. 4(k)(1)(A)).

This Court has personal jurisdiction over C4GT for several reasons. First, C4GT was formed for the purpose of developing, constructing, owning, and operating the C4GT Plant in Charles City, Virginia. (Compl. ¶ 2); *see* Va. Code Ann. § 8.01-328.1(A)(1). Additionally, C4GT negotiated with VNG representatives located at VNG's Virginia Beach headquarters. (Compl.

¶¶ 4–5.)  C4GT also entered into the Precedent Agreement—the subject of this suit—which contemplated C4GT's purchase of firm transportation services on VNG's high-pressure transmission system path between Quantico and Chesapeake, Virginia.  (*Id.*); *see* Va. Code Ann. § 8.01-328.1(A)(2); *CSC Computer Sciences Int'l v. Finmarc Acquisitions LLC*, No. 1:16-CV-85, 2016 WL 2726642, at *1 (E.D. Va. May 9, 2016) (finding jurisdiction based on defendant entering into contracts with entities in Virginia).  Finally, C4GT owns real property located at 3001 Roxbury Road, Charles City, Virginia 23030, the intended site of the C4GT Plant.  (Compl. ¶ 4); *see* Va. Code Ann. § 8.01-328.1(A)(6); *Al-Suyid v. Hifter*, No. 1:20-cv-170, 2020 WL 8211457, at *3 (E.D. Va. June 17, 2020) (finding personal jurisdiction in part because defendants owned property in Virginia).

In sum, C4GT "purposely availed itself of Virginia by transacting business in the Commonwealth," and this business activity gave rise to the breach of contract cause of action in this case.  *Selke v. Germanwings GmbH*, 261 F. Supp. 3d 645, 653 (E.D. Va. 2017).

   3. <u>Venue</u>

Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to VNG's claims occurred in this District.  Specifically, the Precedent Agreement that forms the basis for this suit contemplated delivery of natural gas along a path between Quantico and Chesapeake, Virginia.  (Compl. ¶¶ 4–5.)  VNG representatives negotiated the terms of the Precedent Agreement with C4GT from offices in Virginia Beach.  (*Id.*)  Moreover, C4GT planned to construct the C4GT Plant on a parcel of land that C4GT owns at 3001 Roxbury Road in Charles City, Virginia, which is within the Richmond Division of this District.  (*Id.*); *see also* Local Civ. R. 3(B) (noting the inclusion of Charles City in the Richmond Division) and 3(C) (stating that the venue rules for districts from 28 U.S.C. § 1391 shall also determine proper

division). Construction of the C4GT Plant in Charles City—and the natural gas services that VNG was to provide for the benefit of the C4GT Plant—formed the basis for the Precedent Agreement. (Compl. ¶ 5.)

    4.    <u>Service of Process</u>

Under Federal Rule of Civil Procedure 4(h), a corporation, partnership, or other unincorporated association may be served "(A) in the manner prescribed by Rule 4(e)(1) for serving an individual; or (B) by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1). Rule 4(e), in turn, provides that an individual may be served according to "state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." *Id.* 4(e)(1). Virginia law provides, "A domestic or foreign limited liability company's registered agent is the limited liability company's agent for service of process, notice, or demand required or permitted by law to be served on the limited liability company." Va. Code. Ann. § 13.1-1018(A).

C4GT's registered agent is Corporation Service Company. (ECF No. 12, Request for Entry of Default, Decl. of Ryan D. Frei, Ex. 1.) VNG, through a private process server, served C4GT with the Summons and Complaint by its registered agent, Corporation Service Company, on February 5, 2021, as demonstrated by the Summons Returned Executed and Proof of Service filed by VNG on February 8, 2021. (ECF No. 10.) VNG thus properly served C4GT with process.[3]

---

[3] As indicated above, VNG also served C4GT with its Request for Entry of Default via Federal Express and through C4GT's Virginia registered agent. VNG will serve the instant Motion for Default Judgment and accompanying documents on C4GT using the same two methods.

12

**B.     The Complaint Alleges Facts Establishing All Elements of VNG's Breach of Contract Claims Against C4GT.**

VNG requests judgment in its favor because the allegations in its Complaint are sufficient to establish its breach of contract claims. Because C4GT has defaulted, the factual allegations in the Complaint are deemed admitted and this Court need only determine whether VNG's well-pleaded allegations support default judgment on C4GT's breaches of the Precedent Agreement. *See Ryan*, 253 F.3d at 780.

To state a claim for breach of contract under Virginia law,[4] a plaintiff must plausibly allege: "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Filak v. George*, 267 Va. 612, 619, 594 S.E.2d 610, 614 (2004). The Complaint satisfies the first element by alleging and attaching a binding contract—the Precedent Agreement—which VNG and C4GT executed on October 3, 2019. (Compl. ¶ 4; Compl. Ex. 1.)

The Complaint alleges that C4GT breached the Precedent Agreement in two ways. First, the Credit Support Addendum to the Agreement required C4GT to provide financial information or credit support within five (5) business days of a request from VNG. (Compl. ¶ 51.) VNG first issued such a request on September 24, 2020. (*Id.*) As C4GT did not provide the requested credit support, VNG made another demand on October 1, 2020. (*Id.* ¶¶ 52–53.) As of the date VNG filed its Complaint (February 4, 2021), and still to this day, C4GT has not complied with its obligation to provide credit support. (*Id.* ¶ 54.) Under Section 8 of the Precedent Agreement, a breach of C4GT's obligations under the Credit Support Addendum constitutes a material breach of the Agreement, for which there is no cure period. (*Id.* ¶ 55.) Accordingly, the Complaint

---

[4] The Precedent Agreement provides that "interpretation and performance" of the Agreement is governed by Virginia law. (Compl. Ex. 1, Precedent Agreement § 15.)

13

adequately alleges that C4GT breached its credit support obligations under the Agreement.

Second, C4GT breached its obligation to pay VNG the Customer Reimbursement Amount, which C4GT owed because VNG terminated the Precedent Agreement for C4GT's breach of the Credit Support Addendum. (*Id.* ¶ 56.) VNG terminated the Agreement through notice to C4GT on October 9, 2020. (*Id.*) VNG's termination constitutes a Reimbursable Event under the Agreement, which triggered C4GT's obligation to pay the Customer Reimbursement Amount. (*Id.* ¶ 57.) On October 21, 2020, VNG presented C4GT with the itemized Invoice for the Customer Reimbursement Amount, $2,115,576.64, as well as the detailed Cost-to-Date Analysis. (*Id.* ¶ 58.) C4GT did not exercise its right to audit VNG's books and records with respect to the Invoice and did not dispute the Invoice. (*Id.* ¶ 60.) Payment of the Invoice was due on December 20, 2020. (*Id.* ¶ 61.) As of the date VNG filed its Complaint (February 4, 2021), and still to this day, C4GT has not paid the Invoice or any portion thereof. (*Id.*) C4GT's failure to pay the Customer Reimbursement Amount within sixty (60) days of the Invoice is a breach of Section 10 of the Precedent Agreement, a provision that survives the Agreement's termination. (*Id.* at ¶ 62.)

Finally, C4GT's breach damaged VNG because VNG has not been paid the Customer Reimbursement Amount of $2,115,576.64, to which it is entitled under the Precedent Agreement. (*Id.* ¶ 63). VNG also has not received the requisite interest on this amount, which must be calculated at an annual rate equal to one hundred (100) basis points above the U.S. Prime Rate from December 20, 2020—the date payment was due—until the date of payment. (*Id.*; Compl. Ex. 1, Precedent Agreement § 10(e).)

Having alleged an enforceable obligation, a breach of that obligation by C4GT, and damages due to C4GT's breach, VNG has adequately pled its breach of contract claims.

**C.      VNG Is Entitled To Damages in the Amount of $2,115,576.64, Plus Interest.**

As set forth above and in the Precedent Agreement, VNG is entitled to payment of the Customer Reimbursement Amount plus interest. The Customer Reimbursement Amount includes: "(I) [C4GT]'s Proportionate Share of VNG Incurred Project Costs *plus* (II) [C4GT]'s Proportionate Share of any cancellation or termination costs under contracts with VNG vendors or contractors that cannot be reasonably avoided by termination, *minus* (III) (X) mitigation amounts associated with VNG using reasonable efforts to resell such terminated [C4GT]'s transportation capacity available to be sold, if any, as prudently determined by VNG, and (Y) [C4GT]'s Proportionate Share of the proceeds or reductions resulting from returning or reselling construction materials or cancelling purchase orders and contracts to the extent possible and practical." (Compl. Ex. 1, Precedent Agreement § 10(b) (emphases in original).) In this definition, C4GT's "Proportionate Share" means the ratio of C4GT's Maximum Daily Contract Quantity ("MDCQ"), to the total MDCQ for the Project—or the portion of natural gas that VNG would deliver to C4GT under the Project, versus the portion VNG would deliver to its other customers. (*Id*.; Compl. ¶ 19.)

The Customer Reimbursement Amount of $2,115,576.64 appears on the Invoice, which also reflects a breakdown of the Amount into five categories: (1) Engineering; (2) Environmental; (3) Land; (4) Overheads; and (5) Internal Labor. (Compl. Ex. 8, at 1.) VNG also provided C4GT with the Cost-to-Date Analysis containing a further breakdown of the VNG Incurred Project Costs and showing C4GT's share of these costs. (Yagelski Decl. Ex. 1; Compl. ¶¶ 40–41.) The costs included engineering-related services, survey work, and legal spend and were determined using invoiced values and internal charged amounts recorded by VNG. (*Id.*)

More specifically, VNG tracked the Project's costs in a detailed Microsoft Excel spreadsheet entitled, "Master Forecast." (Yagelski Decl. Ex. 2; Yagelski Decl. ¶ 4.) The Master

Forecast utilized a work breakdown structure, meaning it organized work associated with the Project by breaking it down into smaller, categorized components. (Yagelski Decl. ¶ 4.) The Master Forecast captured costs by referring to contracts with suppliers and verifying actual dollars spent—including internal charged amounts—using PeopleSoft, VNG's accounting system of record. (*Id.*) The Project costs in the Master Forecast were recorded, reconciled, and audited regularly. (*Id.*) The detailed Master Forecast, reflecting the breakdown of each individual Project cost, is attached to the Declaration of Kenneth W. Yagelski. (Yagelski Decl. Ex. 2.)

To calculate the Customer Reimbursement Amount, VNG retrieved the Project costs through the end of September 2020 from the Master Forecast. (Yagelski Decl. ¶ 5.) In other words, the costs and cost categories were directly translated to the Invoice and Cost-to-Date Analysis. (*Id.*) The Precedent Agreement provided that the Customer Reimbursement Amount, which reflects C4GT's proportionate share of the Project costs, would be calculated based on C4GT's majority share of the Project's MDCQ. (*Id.* ¶ 6.) Accordingly, VNG applied the amount of C4GT's majority share to the total Project costs from the Master Forecast to formulate the Customer Reimbursement Amount for the Invoice and the Cost-to-Date Analysis. (*Id.*) The cost amounts reflected in the Invoice and Cost to Date Analysis were drawn directly from VNG's Master Forecast spreadsheet, which contains the raw data underlying the Invoice and Cost to Date Analysis. (*Id.* ¶ 7.)

VNG did not need to cancel or terminate contracts with vendors or other contracts due to the termination of the Precedent Agreement, so no cancelation or termination costs were charged to C4GT. (*Id.* ¶ 8.) In compliance with the Agreement, VNG made reasonable efforts to mitigate the VNG Incurred Project Costs to be reimbursed by C4GT. (*Id.* ¶ 9.) VNG limited its costs to those necessary to support the CPCN, which involved a single application and proceeding for the

entire Project, not just for C4GT. (*Id.*) But because the Project as to C4GT never reached the stage of procuring materials and supplies, there were no costs for VNG to mitigate by returning, canceling, selling, or reassigning materials or supplies. (*Id.*) Accordingly, while VNG limited the Project costs to those necessary for the CPCN, there were no mitigation amounts to subtract from the costs charged to C4GT. (*Id.*)

Additionally, as explicitly contemplated by Paragraph 10(a) of the Precedent Agreement, C4GT

> acknowledge[d] that in order to develop and construct the Project, VNG has incurred, and will continue to incur, costs, including but not limited to, surveying and site acquisition, material and equipment costs, labor costs, engineering and design services, environmental consulting and permit-related costs, regulatory approval and legal services costs, internal overhead and any debt and equity carrying costs (as determined by VNG's then-current capital structure), and to the extent any reimbursement by Customer to VNG is considered taxable income to VNG, the costs associated with such tax effect.

(Compl. Ex. 1, Precedent Agreement § 10(a); *see also* Yagelski Decl. ¶ 10.) Indeed, the scope of the Project, and therefore the scope of the cost categories reflected in the Invoice and Cost-to-Date Analysis, were directly dependent and predicated upon C4GT's commitment under the Precedent Agreement. (Yagelski Decl. ¶ 10.) Had C4GT not made that commitment, VNG's infrastructure expansion plan would have been significantly different. (*Id.*) In other words, VNG incurred certain costs to develop the Project as a direct result of C4GT's commitment to the Project pursuant to the Precedent Agreement. (*Id.*). Those costs comprise the Customer Reimbursement Amount and are set forth in the Invoice and Cost-to-Date Analysis. (*Id.*)

In this case, the Court can award damages without an evidentiary hearing because the amount of VNG's damages can be determined from the declaration and documentation attached to its Complaint and this Motion for Default Judgment. *See Anderson*, 2012 WL 1656504, at *4. VNG seeks the Customer Reimbursement Amount, which is reflected in the Invoice and detailed

17

through a chart with a breakdown of cost categories and subcategories in the Cost-to-Date Analysis. *See JTH Tax, Inc. v. Geraci*, No. 2:14-cv-236, 2014 WL 4955373, at *2, 7 (E.D. Va. Oct. 2, 2014) (Jackson, J.) (awarding damages based on two detailed lists of accounts receivable and fees, in addition to a promissory note); *First Assembly of God of Alexandria, Inc. v. Cathedral Design & Constr., Inc.*, No. 1:08-cv-1053, 2009 WL 1392541, at *7–9 (E.D. Va. May 15, 2009) (Hilton, J.) (determining damages from a spreadsheet outlining various categories of costs and expenses); *Fin. Pacific Leasing, Inc. v. Moess Trucking LLC*, No. 3:20-cv-00066, 2021 WL 279608, at *3 (W.D. Va. Jan. 27, 2021) (deeming a chart listing payments a sufficient evidentiary basis to award damages for breach of contract). VNG has provided a detailed declaration and the Master Forecast to explain and support the calculation of the Customer Reimbursement Amount and the generation of the Invoice and Cost-to-Date Analysis. The interest on the Customer Reimbursement Amount is calculable using the formula in the Precedent Agreement. Specifically, interest must be calculated at an annual rate equal to one hundred (100) basis points above the U.S. Prime Rate from December 20, 2020—the date payment by C4GT was due—until the date of payment. (Compl. Ex. 1, Precedent Agreement § 10(e).)

In light of the detailed information that VNG has provided to support its damages, VNG respectfully submits that the Court need not hold a hearing to enter default judgment against C4GT and award VNG its requested damages.[5]

## V.   CONCLUSION

For the foregoing reasons, VNG respectfully requests that the Court enter default judgment against C4GT pursuant to Federal Rule of Civil Procedure 55(b), and award VNG damages of

---

[5] Of course, if the Court would prefer an evidentiary hearing, VNG would be happy to accommodate such a request.

$2,115,576.64, plus pre-judgment interest calculated at an annual rate equal to one hundred (100) basis points above the U.S. Prime Rate from December 20, 2020 until the date of judgment.[6]

Dated: May 6, 2021                      Respectfully submitted,

                                            */s/ Ryan D. Frei*
                                            Joseph K. Reid, III (VSB No. 35724)
                                            Ryan D. Frei (VSB No. 70996)
                                            Katherine E. Lehnen (VSB No. 92357)
                                            McGuireWoods LLP
                                            Gateway Plaza
                                            800 East Canal Street
                                            Richmond, Virginia 23219
                                            Tele: (804) 775-1134
                                            Fax: (804) 698-2168
                                            jreid@mcguirewoods.com
                                            rfrei@mcguirewoods.com
                                            klehnen@mcguirewoods.com

                                            *Counsel for Plaintiff Virginia Natural Gas, Inc.*

---

[6] As of the date of this filing, the requested interest rate equates to 4.25% (i.e., the current U.S. Prime Rate of 3.25% plus 100 basis points, or 1%).

**CERTIFICATE OF SERVICE**

I hereby certify that on the 6th day of May, 2021, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to any and all counsel of record. In addition, I further certify that on the same date, I also sent the foregoing to Defendant C4GT, LLC—at its business address and through its registered agent in Richmond, Virginia—using the following delivery methods:

**Via Federal Express**
C4GT, LLC
Attn: Anand Gangadharan
23955 Novi Road
Novi, Michigan 48375

**Via Hand-Delivery**
C4GT, LLC
Registered Agent: Corporation Service Company
100 Shockoe Slip, Floor 2
Richmond, VA 23219-4100

                                              */s/ Ryan D. Frei*
                                              Ryan D. Frei (VSB No. 70996)
                                              McGuireWoods LLP
                                              Gateway Plaza
                                              800 East Canal Street
                                              Richmond, Virginia 23219
                                              Tele: (804) 775-1134
                                              Fax:  (804) 698-2168
                                              rfrei@mcguirewoods.com

                                              *Counsel for Plaintiff Virginia Natural Gas, Inc.*